AMERICAN BAKERIES CO., Plaintiff,

v.

PAN–O–GOLD BAKING CO.,
Defendant.

Civ. No. 4–86–595.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 15, 1986.

Dorsey & Whitney, Peter Dorsey, Minneapolis, Minn. (Alexander, Unikel, Bloom, Zalewa & Tenenbaum, Richard Alexander, James D. Zalewa and Mark J. Liss, Chicago, Ill., of counsel), for plaintiff.

Faegre & Benson, John D. French, Charles E. Steffey and Calvin L. Litsey, Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

American Bakeries Co. (ABC) brought this action for compensatory and punitive damages, an accounting, and injunctive relief against Pan-O-Gold Baking Co. Both parties are commercial manufacturers of baked goods, and their dispute arises from the names and packages of their competing Italian bread products. This court has jurisdiction to hear trademark claims pursuant to 15 U.S.C. § 1121. By order dated August 20, 1986, this court granted ABC's motion for a preliminary injunction. Defendant now moves to stay this litigation pending the completion of certain United States Patent and Trademark Office (PTO) proceedings.

*Background*

Plaintiff manufactures a variety of bakery products which carry the "Taystee" mark. Since 1981, ABC has sold "D'Italiano" baked goods in Minnesota; in October 1984, it began selling D'Italiano Italian bread in this market. ABC has registered D'Italiano as U.S. Trademark No. 1,265,871. Defendant, a licensee of Roush Bakery Products Co., is a regional manufacturer of "Country Hearth" brand bakery goods. Pan-O-Gold purchases the mixes for these products from Roush and sells them in Roush's packaging. Other Roush licensees have produced its "D'Italia" products since 1982, but Pan-O-Gold first began marketing D'Italia bread earlier this year.

In 1985, Roush sought to register a "Country Hearth D'Italia" mark. ABC, citing its D'Italiano registration and asserting use and ownership of "D'Italiano and design" and a likelihood of confusion, opposed Roush's application. Roush answered, denying any likelihood of confusion and asserting defenses of estoppel, laches, acquiescence, improper issuance of registration, fraudulent procurement of registration, and lack of standing. On similar grounds, Roush counterclaimed for cancellation of American's mark. This "opposition/cancellation proceeding" is now before the Trademark Trial and Appeal Board (TTAB) of the PTO. The last brief is presently due in September 1987. A decision is not anticipated before 1988.

On July 25, 1986, American filed the instant litigation, alleging violations of federal trademark statutes, 15 U.S.C. §§ 1114(a) and 1125(a) and of the Minnesota Deceptive Trade Practices Act, and common law unfair competition and trademark infringement. Pan-O-Gold's answer and counterclaim for cancellation of the D'Italiano registration are based on the same grounds as Roush's answer and counterclaim in the PTO proceeding.

On August 20, 1986, this court granted a preliminary injunction barring Pan-O-Gold and its officers and agents from using the

marks "D'Italia" or "D'Italia and Design" in the state of Minnesota.[1] Asserting that there can be no harm to ABC and that the PTO has "primary jurisdiction" to hear such trademark disputes, Pan-O-Gold now urges the court to stay all proceedings until the completion of PTO proceedings. ABC strenuously objects to this motion, asserting that primary jurisdiction is inapplicable and that this court should proceed and permit the PTO to stay its proceedings instead.

*Discussion*

The doctrine of primary jurisdiction "is concerned with promoting the proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). It "comes into play whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views." *Id.* at 64, 77 S.Ct. at 165. The underlying principle is

> that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies better equipped than courts by specialization, by insight gained through

experience, and by more flexible procedure.

*Far East Conference v. United States,* 342 U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952).

In some cases, the principles underlying the doctrine of primary jurisdiction are so strong that preliminary submission to a regulatory agency is necessary. *See, e.g., United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) (under circumstances of case, tariff construction was within exclusive primary jurisdiction of Interstate Commerce Commission); *United States v. United States Steel Corp.,* 645 F.2d 1285 (8th Cir.1981) (preliminary ICC interpretation of tariff terms was necessary, and trial court erred in deciding dispute without ICC's views). Even in closely regulated areas, such as rate setting or tariff interpretation, however, referral of a matter to the regulatory agency may be unnecessary or even improper. *E.g., Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976) (court erred in holding that consumer's dispute with airline was within primary jurisdiction of Civil Aeronautics Board).

The briefs of the parties and the court's own research suggest that neither the Supreme Court nor the Court of Appeals has considered whether trial courts should stay proceedings and permit the PTO to exercise primary jurisdiction over trademark disputes such as the instant one. There is a split of authority among the district courts that have addressed the issue. *See, e.g., C–Cure Chemical Co. v. Secure Adhesives Corp.,* 571 F.Supp. 808 (W.D.N.Y.1983) (comparing approaches of various courts).

The doctrine of primary jurisdiction arose in regulated industries, and the earlier cases emphasized "the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions." *United States v. Western Pacific Railroad Co.,*

---

**1.** The parties have notified the court that Pan-O-Gold has developed a new name and packaging for its Italian bread product, to which ABC has no trademark-based objection. Presumably, Pan-O-Gold's newly-packaged Country Hearth Italian Bread is, or soon will be, in the market.

352 U.S. at 64, 77 S.Ct. at 165 (citing *Texas & Pacific Railroad Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 533 (1907)). The instant case does not involve a regulated industry. Moreover, it is a private dispute between two manufacturers, "not a public issue of industry-wide or regulatory concern." *Johnson & Johnson, Inc. v. Wallace A. Erickson & Co.*, 627 F.2d 57, 62 (7th Cir.1980) (finding doctrine of primary jurisdiction inapplicable where plaintiff sought to submit patent dispute to PTO). *See also Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976) (consumer dispute with airline not within primary jurisdiction of Civil Aeronautics Board).

The trial courts that have stayed their proceedings in deference to the asserted primary jurisdiction of the PTO have followed the more recent line of primary jurisdiction cases and stressed the "expert and specialized knowledge," *United States v. Western Pacific Railroad Co.*, 352 U.S. at 64, 77 S.Ct. at 165, of the regulatory agency. Thus, in *Driving Force, Inc. v. Manpower, Inc.*, 498 F.Supp. 21 (E.D.Pa.1980), the court emphasized the PTO's "broad authority to regulate trademarks," *id.* at 25, and noted that decisions of the TTAB are "entitled to the most respectful consideration because of the Patent Office's day-to-day expertise in adjudicating cases wherein the ultimate question decided is the question of 'likelihood of confusion....' as that term is employed in various parts of the Lanham Act." *Id.* (citation omitted). While acknowledging that PTO decisions do not bind the courts, the *Driving Force* court stressed the likelihood that agency adjudication would be "a material aid in ultimately deciding" the federal court dispute." *Id.* Similarly, in *C–Cure Chemical Co., Inc. v. Secure Adhesives Corp.*, 571 F.Supp. 808 (W.D.N.Y.1983), the court, relying on *Driving Force*, stressed the TTAB's "axiomatic ... specialized expertise and experience," *id.* at 823, and the likelihood that its consideration would "ma-

terially aid in ultimately deciding the issues presented before the court." [2] *Id.* *See also Litton Bionetics, Inc. v. Bionetics Corp.*, Civil No. R–84–84 (D.Md. Sept. 14, 1985) (similar reasoning); *Cf. Kemin Industries, Inc. v. Watkins Products, Inc.*, 183 U.S.P.Q. 799 (D.Minn.1974) (granting stay on grounds of judicial economy, where PTO resolution would be faster and might eliminate need for further litigation in district court).

■ Certain factors caution against the extension of the doctrine of primary jurisdiction to trademark disputes such as the instant one. First, the proceedings and determinations of the PTO are of limited importance in a federal court proceeding:

> Generally, a court defers to the exercise of an administrative agency's primary jurisdiction to have the benefit of the agency's expertise in the assessment of disputed facts that are not open for reconsideration by the court.... But when registration decisions are litigated in a district court ... the proceeding is virtually de novo, since additional cross-examination and presentation of additional testimony is permitted. The record made in the PTO is admitted into evidence, but the fact finding of that office is not conclusive, nor is the court's consideration limited to that record."

*Continental Connector Corp. v. Continental Specialties Corp.*, 413 F.Supp. 1347 (D.Conn.1976) (citations omitted). *See also Questor Corp. v. Wold Industries, Inc.*, 194 U.S.P.Q. 141 (D.Minn.1976) ("The value of a Patent Office determination of the right to register is ... not res judicata or binding on this Court."); *Sam S. Goldstein Industries, Inc. v. Botany Industries, Inc.*, 301 F.Supp. 728, 731 (S.D.N.Y.1969) ("While it may be commendable ... to permit a specialized agency to render its opinion in order to gain the benefit of that administrative expertise, in a registered trademark cancellation action the court

**2.** The court expressly excluded discovery from the stay and set a discovery schedule. *Id.* at 824.

must consider the issues, in effect, de novo.") The district court, on the other hand, can conclusively determine the issues common to the two proceedings. *E.g. Sonora Cosmetics, Inc. v. L'Oreal S.A.,* 631 F.Supp. 626 (S.D.N.Y.1986) (Stay denied because district court could conclusively determine claims. "Moreover, ... the Commissioner of Patents has held that, inasmuch as TTAB determination of the validity of registration are merely advisory to the courts, it is preferable for the TTAB to stay its own proceedings where parallel litigation occurs in the district court." *Id.* at 629 (citing *The Other Telephone Co. v. Connecticut National Telephone Co.,* 181 U.S.P.Q. 779, 782 (Com'r 1974)), *aff'd,* 795 F.2d 1005 (2d Cir.1986).[3]

■ Second, deference to an agency's primary jurisdiction is most appropriate where an agency has specialized expertise and experience and the issues in dispute are not within the conventional experience of judges. Primary jurisdiction should not be invoked where the "standards to be applied ... are within the conventional competence of the courts and the judgment of a technically expert body is not likely to be helpful in the application of these standards...." *Nader v. Allegheny Airlines Inc.,* 426 U.S. at 305–06, 96 S.Ct. at 1987–88. The issues in this case are not unconventional—they involve questions routinely considered by trial courts. *E.g., Sonora*

*Cosmetics, Inc. v. L'Oreal, S.A.,* 631 F.Supp. at 629 ("questions of the validity of trademark registration are within the competence of the district court"); *Look Magazine Enterprises S.A. v. Look, Inc.,* 596 F.Supp. 774 (D.Del.1984); *Questor Corp. v. Wold Industries, Inc.,* 194 U.S.P.Q. 141 (D.Minn.1976). *Cf. RCA Corp. v. Applied Digital Data Systems, Inc.,* 467 F.Supp. 99, 103 (D.Del.1979) (validity of patent could "hardly be said to be beyond the 'conventional experience of judges.'")

Finally, there is the question of judicial economy, which both parties claim in their favor. Court have considered motions to stay, pending PTO consideration, as raising the question of primary jurisdiction or as routine stay motions. In either context, the case for permitting the PTO to proceed first is bolstered where the PTO adjudication might serve as a final disposition of the matter, making further trial court proceedings unnecessary. *E.g. Driving Force, Inc. v. Manpower, Inc.,* 498 F.Supp. 21, 25 (E.D.Pa.1980);[4] *Kemin Industries, Inc. v. Watkins Products, Inc.,* 183 U.S.P.Q. 799 (D.Minn.1974). A stay is inappropriate where it "would merely delay, without compensating benefits, the resolution of these issues." *Sam S. Goldstein Industries, Inc. v. Botany Industries, Inc.,* 301 F.Supp. 728, 731 (S.D.N.Y.1969). *See also Continental Connector Corp. v. Continental Specialties Corp.,* 413 F.Supp.

---

3. Pan-O-Gold asserts that the court has "indicated a willingness to defer to the expertise of the Patent and Trademark Office." Its argument appears to assume that a PTO ruling in the cancellation/opposition proceedings would substantially affect the instant dispute. As the court noted in its August 20, 1985 order, "registration is prima facie evidence that a mark is not merely descriptive." Slip op. at 5 (citing *Union Carbide Corp. v. Ever-Ready, Inc.,* 531 F.2d 366, 378 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976)). Prima facie evidence is, of course, not conclusive evidence. In any trademark case, the court must ultimately make its own determination concerning the validity of the mark. A PTO decision reaffirming ABC's registration would not greatly strengthen ABC's case. A PTO decision cancelling the registration would merely eliminate a rebuttable presumption. This change in the burden of proof is simply not sufficient to justi-

fy the very considerable delay of this litigation. *C.f. Johnson & Johnson, Inc. v. Wallace A. Erickson & Co.,* 627 F.2d 57, 62 (7th Cir.1980). The registration of ABC's mark was only one the factors the court considered in determining that ABC was likely to prevail on the merits and entitled to preliminary relief. At trial, registration will also be only one of the relevant factors.

4. The stay in that case did not ultimately avoid further trial court action. After the TTAB found against the defendant (who had sought the stay), defendant urged the trial court to continue the stay pending resolution of any appeal to the Court of Customs and Patent Appeals. Noting that such relief would "effectively foreclose[ ] ... those district court remedies ... provided for in the Labor Act," the court denied this second motion to stay. *The Driving Force, Inc. v. Manpower, Inc.,* 538 F.Supp. 57 (E.D.Pa. 1982).

1347, 1350 (D.Conn.1976) ("interests of judicial economy are best served by eschewing the primary jurisdiction objection in cases … where facts concerning the disputed registration are going to be litigated in connection with other claims properly within this court's jurisdiction.")

This is not a case involving exclusive primary jurisdiction. The request for a stay is, as both parties concede, within the court's discretion. *E.g., Questor Corp. v. Wold Industries, Inc.,* 194 U.S.P.Q. 141 (D.Minn.1976); *Kemin Industries, Inc. v. Watkins Products, Inc.,* (D.Minn.1974). The Court of Appeals has cautioned trial courts to "be reluctant to invoke the doctrine of primary jurisdiction, which often, but not always, results in added expense and delay to litigants where the nature of the action deems the application of the doctrine inappropriate." *United States v. McDonnell Douglas,* 751 F.2d 220, 224 (8th Cir.1984) (citation omitted). In the instant case, a stay is more likely to prolong this dispute than lead to its economical disposition. While the issues overlap, they are far from identical. The instant litigation includes state claims not before the TTAB, and even the federal claims involve issues—such as the existence or absence of any intent to infringe—which cannot be raised before the TTAB. Neither are the parties identical. Under the circumstances of this case, the court does not find that a stay is warranted. A stay would result in a long delay of this action and there would be uncertain benefit to these proceedings from the delay.

Accordingly, based on the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that defendant's motion for stay of litigation is denied.